WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Jessie N. Hernandez, | No. CV-16-01486-PHX-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Gemini Hospice LLC, et al., | |
| Defendants. | |
| | |
| Gemini Hospice LLC, | |
| Counter-Claimant, | |
| v. | |
| Jessie N. Hernandez, | |
| Counter-Defendant. | |

Pending before the Court is Plaintiff Jessie Hernandez's ("Hernandez") Motion to Dismiss Gemini Hospice, LLC's ("Gemini") Amended Counterclaim for Fraud, (Doc. 50). For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

This counterclaim for fraud arises from Hernandez's lawsuit alleging that Gemini violated the Fair Labor Standards Act and engaged in unlawful defamation against her. (Doc. 48.) Hernandez was employed by Gemini as a certified nursing assistant for approximately five months between December 2014 and May 2015. (*Id.* at 10.) Part of Hernandez's duties involved traveling to visit and treat certain patients. (*Id.*) Gemini

alleges that Hernandez knew that she was not permitted to obtain compensation for hourly time spent driving to her first work location of the day or driving home from her last work location of the day, regardless of whether that work location was the Gemini office or the home of a patient. (*Id.* at 11.) Gemini alleges that despite this, Hernandez continuously submitted claims for which she was paid for the time and mileage involved in this travel and that such claims were false and inflated. (*Id.* at 11–12.) Gemini also asserts that Hernandez inflated the actual amount of miles driven between patient visits in the middle of the day, ensuring compensation for miles that she never actually drove. (*Id.* at 12.) Gemini goes on to allege that Hernandez was compensated for approximately 1,250 miles and over 100 hours that she was not entitled to as a result of this fraudulent scheme. (*Id.* at 13.)

Hernandez successfully pursued payment for the time she spent traveling to her first patient of the day for the period of March 16 through March 31, 2015, by filing a claim for payment with the Industrial Commission of Arizona ("ICA"). (Doc. 50, Ex. 1.) Hernandez asserted before the ICA that she had in fact been instructed by the company to submit hours and mileage involved in making the first patient visit of the day, and asserted that "the employer did not raise this as an issue until this pay period." (*Id.*) While Gemini did not contest that Hernandez actually spent the time involved in traveling to the first visit, it asserted that that company policy did not pay hours or mileage to their first client visit of the day. (*Id.*) The ICA rejected Gemini's defense both by awarding Hernandez all the amount of the additional pay she sought, and by noting that "there is no written policy in the company handbook coving (sic) this issue of documenting mileage and hourly start time."[1] (*Id.*)

---

[1] The Counterclaim specifies that Gemini does not allege fraud for the excess billings for the period between March 16 through March 31, 2015—the period for which Hernandez successfully pursued her claim against Gemini for non-payment of the hours and miles submitted during that period. (Doc. 48 at 14.) Further, although Hernandez was apparently employed by Gemini until early May 2014, Gemini's counterclaim specifies that Hernandez only submitted "false and inflated" claims for the period between December 2014 and March 31, 2015. (Doc. 48 at 11.) The Court thus construes the counterclaim as only attempting to assert fraud claims for submission up to March 15, 2015.

In this present motion to dismiss, Hernandez seeks the dismissal of Gemini's fraud claim on two grounds: First, because it is precluded by the ICA's administrative determination. (Doc. 50 at 5–7.) Second, because it is not pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 50 at 7.)

**DISCUSSION**

**I. Legal Standard**

Claims sounding in fraud must satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Therefore, to survive a motion to dismiss, a claim that alleges fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires the claimant to establish "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

"[A]s a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion," however, "it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted)). This exception includes reports by administrative bodies, and thus "[j]udicial notice is appropriate for records and reports of administrative bodies." *Id.* (internal citations and quotations omitted). Therefore, this Court will take judicial notice of the administrative records of the ICA and include them in its analysis of the current motion to dismiss.

///
///
///

## II. Discussion

### A. Sufficiency of the Pleadings

Gemini sufficiently alleges its counterclaim for fraud. In Arizona, a claim for fraud requires:

> proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291–92, 229 P.3d 1031, 1033–34 (Ct. App. 2010).

Gemini's counterclaim "state[s] with particularity the circumstances constituting fraud or mistake," and therefore satisfies the requirement of Rule 9(b). Fed. R. Civ. P. 9(b). Gemini alleges that Hernandez utilized three different methods to defraud Gemini: 1) she falsely included the time and distance it took her to arrive at her first location for the day despite knowing that including this time was contrary to company policy, 2) she falsely inflated the time and distance it took to get to her first location as well as other locations in the middle of the day and 3) she wrongfully included the time spent traveling home from her last location despite knowing that this time was not compensable under company policy. (Doc. 48 at 12–13.) Gemini provides dates and examples for each of these allegations. (*Id.*) For example, Gemini outlines that on January 21 and 22, as well as on various other dates, Hernandez "fraudulently claimed that it took 25 miles" to drive to a certain patient's location from Gemini's Superior Office despite the fact that the actual distance was only 17.5 miles. (Doc. 48 at 12.) Although the counterclaim does not document every single alleged occurrence, it provided enough detail in its examples to provide the "the who, what, when, where, and how of the misconduct charged." *Cafasso*, 637 F.3d at 1055.

Gemini further alleged that it "relied on the truth of Jessie Hernandez's representations" in paying her and that it had a right to do so. (Doc. 48 at 13.) Gemini also claimed to be unaware that "the time and mileage records submitted by Jessie Hernandez were fraudulently inflated." (*Id.*) Furthermore, Gemini "estimates that approximately 1250 or more miles" and "approximately 100 or more hours" were paid to Hernandez based on these fraudulent representations. These allegations are sufficiently detailed to satisfy the pleading requirements of Rule 9(b), and thus Gemini's counterclaim will not be dismissed on this basis.

**B. Preclusion**

"Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in state court."[2] *Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir. 1995). "This rule extends to fact-finding by administrative agencies acting in quasi-judicial capacities." *Id.* However, in order to have preclusive effect in federal court, a state agency's administrative decision must also comport with the fairness requirements outlined in *United States v. Utah Construction & Mining Company,* 384 U.S. 394 (1966). *Misischia*, 60 F.3d at 629. A state agency's decision will therefore have preclusive effect if it is 1) "acting in a judicial capacity" and 2) "resolved disputed issues of fact" that 3) "the parties have had an adequate opportunity to litigate." *Utah Const. & Min. Co.*, 384 U.S. at 422. Generally, if the agency is acting in a "judicial capacity to resolve disputed issues of fact and law properly before it," and the parties fail to seek judicial review in the

---

[2] It is not clear whether Hernandez is asserting claim preclusion as well as issue preclusion as a defense to Gemini's fraud claim. To the extent that Hernandez attempts to assert a claim preclusion defense to Gemini's counterclaim, her argument fails. Arizona applies the "same evidence test" to determine if claim preclusion applies. *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (Ct. App. 1997). Under this test, "[i]f no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Id.* A fraud allegation is not the "same claim" as a worker's compensation claim under the same evidence test: fraud is a completely independent action from a worker's compensation claim in Arizona. *See Comerica Bank v. Mahmoodi*, 224 Ariz. at 291–92 (outlining the elements of fraud under Arizona law); *see also Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 149, 213 P.3d 288, 298 (Ct. App. 2009) (recognizing bad faith as a separate tort from a worker's compensation claim that could not be barred under claim preclusion). Therefore, claim preclusion does not apply in this case.

state court system upon the issuance of the final administrative decision, then the requirements of *Utah Construction* are met. *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999); *see also Plaine v. McCabe*, 797 F.2d 713, 719 n.12 (9th Cir. 1986) ("If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal.").

Under Arizona law, issue preclusion "applies when an issue was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties." *Hullett v. Cousin*, 204 Ariz. 292, 297–98, 63 P.3d 1029, 1034–35 (2003). Pursuant to Arizona's statutes, the ICA is empowered to investigate and make final determinations regarding wage compensation claims. A.R.S. § 23-357. This investigation includes a hearing as well as various questionnaires submitted by the parties to explain their positions. (Doc. 50, Exs. 1, 2.) If a party does not agree with the ICA's findings, it may seek review in the court system. A.R.S. § 23-358. If a party fails to seek judicial review of the agency's decision, the agency's decision becomes final. A.R.S. § 23-359; *see Olson v. Morris*, 188 F.3d at 1086 ("Under Arizona law, a party's failure to appeal a final administrative decision makes that decision final and res judicata."). Therefore, under Arizona law, findings by the ICA constitute res judicata and can be used to preclude parties from re-litigating issues. *See Mendoza*, 222 Ariz. at 157 (finding that "the superior court was required to accord preclusive effect to the compensability determinations made by the administrative law judges in the ICA proceedings.").

The issue before the ICA was whether Gemini had an enforceable policy that prohibited the payment of Hernandez's time and mileage in traveling to the location of the first patient of her work day. (Doc. 50, Ex. 1 at 2.) As the ICA Findings of Fact and Determination and Directive of Payment itself makes clear, the central question in making this determination was whether Gemini had a legitimate policy that provided for the non-payment of travel time to the first patient of the day during the limited term of

Hernandez's employment. (*Id.*) Hernandez argued that she was instructed when she was first hired that she should submit such claims, and further asserted that the employer did not raise the issue "until this pay period," which according to the counterclaim is the last period in which Hernandez submitted inflated claims. (*Id.* at 3.) As a matter of course then, the resolution of Hernandez's claim for payment involved the question of whether at any time during her employment by Gemini, Gemini had a legitimate policy barring such payments. (*Id.*) The ICA determined that it did not. (*Id.*)

Gemini did not appeal this finding for review in the state court system. Therefore, the determination "was final upon the expirations of the time for seeking review," and the ICA's determination became a valid and final decision on the merits under Arizona law. (Doc. 50, Ex. 1 at 3.) Neither party contests that the ICA's finding that Hernandez's hours were compensable was essential to its ruling. Rather, the issue here is whether the ICA's proceedings "failed to meet the minimum criteria set down in *Utah Construction.*" *Miller*, 39 F.3d at 1033.

In its response, Gemini argues that the ICA's procedure fails the first and third prong of the *Utah Construction* analysis, and thus the ICA's findings should not be granted preclusive effect. (Doc. 56.) These arguments are not persuasive. Gemini asserts that the agency was not acting in a quasi-judicial capacity because the hearing was led by an "investigator" rather than an administrative law judge, the witnesses were not sworn in, testimony was not taken in the same manner that it would have been in a traditional judicial setting, and the hearing lasted fifteen minutes. (Doc. 56 at 6.) However, in *Olson*, the Ninth Circuit held that such formality is not required for a state administrative body's decision to be granted preclusive effect under *Utah Construction*. As in *Olson*, Gemini "mounted a mainly factual defense" and offered what evidence it had to establish its alleged company policy. *Olson*, 188 F.3d at 1086. And, as in *Olson*, the agency rejected Gemini's arguments and came to a different factual conclusion after weighing the parties' arguments. *Id.*

Gemini also asserts that it did not have an opportunity to fully litigate its claims because the ICA hearing centered on the two weeks that Hernandez sought back pay for rather than the duration of her employment. This argument fails as well because the two week time frame contained in Hernandez's complaint constitutes the only two weeks for which Hernandez was not paid for travel time for the first visit of the day during her employment. The defense that Gemini raised to her claim was that it had a policy throughout her employment, of which Hernandez was aware, that prevented payment for such time and mileage. Gemini had the opportunity to present, and did present, all the evidence it had to support the argument that it had a legitimate policy barring payment for travel time to the first patient of the day to the ICA, and the ICA rejected its assertion. *See generally Olson*, 188 F.3d at 1087 ("If Olson had constitutional defenses to the Board's proceedings, he had every right to raise them with the Board or on appeal in state court.") Therefore, the ICA's procedure satisfies the *Utah Construction* analysis.

The availability of independent review by Arizona Superior Court further ensured that the state's administrative process satisfied the requirements of *Utah Construction*. Gemini's failure to take advantage of this independent review process does not negate the value of its availability. *See Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (finding that an individual could not prevent an agency's ruling from having preclusive effect once he "failed to appeal an administrative determination through the state courts"); *Plaine v. McCabe*, 797 F.2d at 719 n. 12 ("If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal."). Gemini had the ability to appeal the decision of the ICA to the state court system; the fact that it chose not to take advantage of the process available to it does not negate the fact that it could have sought further judicial review, and thus its current argument that the ICA's process was inadequate under *Utah Construction* fails. *Plaine*, 797 F.2d 719 n. 12. Therefore, having found that the ICA met the requirements of *Utah Construction*, its finding will be granted preclusive effect here.

However, the application of issue preclusion in this case does not require the dismissal of Gemini's entire counterclaim, as Hernandez asserts. The ICA determined the issue of whether Hernandez's time and mileage spent traveling to her first client visit of the day was compensable for the period of her employment. (Doc. 50, Ex. 1 at 3.) The ICA determined that it was. The issue of whether Hernandez's time and mileage spent traveling to her first client of the day was compensable is thus precluded for the entire period of Hernandez's employment. Nevertheless, to the extent that Gemini does not base its fraud claim on the pay period for the last half of March, the ICA's decision is silent as to whether Hernandez knowingly inflated mileage or time spent traveling to her first location, or to client locations in the middle of the day, or whether Hernandez's alleged practice of submitting the time she spent during travel home for the day constituted a knowing violation of company policy. (*Id.*; Doc. 48 at 12–13.) Therefore, although the application of issue preclusion dismisses Gemini's counterclaim to the extent that it alleges that Hernandez was not entitled to claim time and mileage for her travel to the first patient of the day, it does not entitle Hernandez to a dismissal of the rest of Gemini's counterclaim.

## CONCLUSION

For the foregoing reasons, the Court finds that Gemini's counterclaim is dismissed to the extent that it alleges fraud based on Hernandez's inability to submit claims for travel time and miles to her first location of work for the day. The remainder of the counterclaim is not barred by issue preclusion, and satisfies the pleading requirements of Rule 9(b), and will not be dismissed.

**IT IS THEREFORE ORDERED** that the Plaintiff's Motion to Dismiss (Doc. 50) is **GRANTED** in part and **DENIED** in part.

Dated this 10th day of April, 2017.

_____
Honorable G. Murray Snow
United States District Judge